**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL ACTION NO. 19-102-DLB**

**PETER L. LABRECHE**                                                                                                               **PLAINTIFF**

**v.**                             **MEMORANDUM OPINION AND ORDER**

**ANDREW SAUL, Commissioner
of the Social Security Administration**                                   **DEFENDANT**

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions (Docs. # 11 and 15), and for the reasons set forth herein, **affirms** the Commissioner's decision.

**I.**        **FACTUAL AND PROCEDURAL BACKGROUND**

On January 7, 2016, Plaintiff Peter Labreche filed an application for Disability Insurance Benefits under Title II, alleging disability beginning in October 2015. (Tr. 81, 83, 178). Plaintiff was sixty-one years old at the onset of his disability and he alleged in his application that he was unable to work due to diabetes and high cholesterol and blood pressure, as well as issues with his heart, back, and right shoulder. (Tr. 82-83). His application was denied initially on May 19, 2016, (Tr. 110-113), and was also denied upon reconsideration on August 2, 2016, (Tr. 22, 115-121). At Plaintiff's request, an administrative hearing was conducted, (Tr. 46-80), and on October 10, 2018, Administrative Law Judge ("ALJ") Kendra S. Kleber found that Labreche was not disabled

under the Social Security Act and, therefore, was not entitled to benefits. (Tr. 19-35). This decision became the final decision of the Commissioner on September 5, 2019 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-7).

Plaintiff filed the instant action on October 30, 2019 seeking judicial review of the Commissioner's decision. (Doc. # 1). The matter has culminated in cross-Motions for Summary Judgment, which are now ripe for adjudication. (Docs. # 11 and 15).

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be

affirmed even if there is evidence favoring Plaintiff's side.  *Id.*; *see also Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole."  *Cutlip*, 25 F.3d at 286.

**B.     The ALJ's Determination**

To determine disability, an ALJ conducts a five-step analysis.  *Walters*, 127 F.3d at 529.  Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform.  *See id.* (citing 20 C.F.R. § 404.1520).  The burden of proof rests with the claimant for Steps One through Four.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity."  *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2015—the alleged onset date of the disability.  (Tr. 24). At Step Two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar region of the spine and right shoulder arthritis. (*Id.*).  Judge Kleber found that Plaintiff's other impairments were not severe, including right shoulder rotator cuff injury, diabetes, coalminer's pneumoconiosis, syncope, left

3

shoulder pain, and depression. (Tr. 24-25). At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 26).

The ALJ then found, at Step Four, that Plaintiff possesses the residual functional capacity ("RFC") to perform "medium work" as defined in 20 C.F.R. § 404.1567(c), with the following modifications and limitations:

> [H]e can lift or carry up to 50 pounds occasionally, or up to 25 pounds frequently; stand or walk for up to six hours in an eight hour workday; sit for up to six hours in an eight hour workday; frequently climb ramps or stairs; occasionally climb ladders or scaffolds; frequently balance on a moving platform, stoop, kneel, crouch or crawl; and frequently reach overhead with the right upper extremity.

(Tr. 26-27). Based on this finding, the ALJ concluded that Plaintiff is able to perform his past relevant work as a drill operator, equipment operator, and shot packer in the coal-mining industry. (Tr. 29-30). The ALJ went on to conclude that Plaintiff does not qualify as disabled under the Social Security Act from the alleged onset of disability date through the date of her decision. (Tr. 30).

**C.   Analysis**

Plaintiff asserts in his Motion for Summary Judgment that the ALJ's finding regarding his RFC and ability to perform past relevant work are not supported by substantial evidence. (Doc. # 11-1 at 8-13). Each of these aspects of the ALJ's decision will be addressed in turn.

*1.   Residual Functional Capacity*

Plaintiff first argues that the ALJ's finding with respect to his RFC—that he can perform medium level work with certain modifications—is not supported by substantial

4

evidence, as it is less restrictive than the medical opinions contained in the record. (*Id.* at 8-11). In support of this argument, Plaintiff points to the "reviewing source" opinions of Brian Burton, SDM and Gary Turner, M.D., as well as the "examining source" opinion of J. Dustin Chaney, D.O. (*Id.* at 9).

A claimant's RFC refers to "the most [he] can still do despite [his] limitations" and is assessed "based on all the relevant evidence in [the] case record" including "relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(1)-(3). Non-medical evidence can include "descriptions and observations of [the claimant's] limitations" provided by the claimant. *Id.* § 404.1545(a)(3). The degree of weight afforded to a particular medical opinion depends on the physician's classification as either a nonexamining source, a nontreating (but examining source), or a treating source. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). As the court explained in *Smith*:

> A "nonexamining source" is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." A "nontreating source" (but examining source) has examined the claimant "but does not have, or did not have, an ongoing treatment relationship with" her. A treating source, accorded the most deference by the SSA, has not only examined the claimant but also has an "ongoing treatment relationship" with her consistent with accepted medical practice.

*Id.* (quoting 20 C.F.R. § 404.1502) (internal citations omitted).

Generally speaking, the SSA "give[s] more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [him]." 20 C.F.R. § 404.1527(c)(1). An ALJ need not provide "good reasons" for discounting the opinions of nonexamining and nontreating physicians, as opposed to treating physicians, and instead "weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability."

5

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). In addition, "[o]ther factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)).

Here, none of the medical opinions regarding Plaintiff's RFC were provided by treating physicians, and thus, the ALJ was not required to provide "good reasons" for giving those opinions less than controlling weight. (*See* Doc. # 11-1 at 9) (describing Burton and Dr. Turner as "reviewing sources" and Dr. Chaney as an "examining source"). The regulations merely required the ALJ to weigh these opinions "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)). In addition, the ALJ was permitted to consider non-medical evidence, such as the Plaintiff's own observations about his physical condition. 20 C.F.R. § 404.1545(a)(3).

As an initial matter, Plaintiff's assertion that the ALJ should have given more weight to the opinion of Mr. Burton is misguided. (*See* Doc. # 11-1 at 9). Mr. Burton was a "single decision-maker" or "SDM," and thus, his opinion was not medical evidence. (*See* Tr. 85, 88, 92) (listing Brian Burton as the "SDM" and "disability adjudicator/examiner"); *see also Malcolm v. Comm'r of Soc. Sec.*, No. 13-15188, 2015 WL 1439711, at *5 (E.D. Mich. Mar. 27, 2015). A single decision-maker provides an initial disability determination as part of "'an experimental program offered by the Social Security Administration,' designed to streamline the review of claims." *Malcolm*, 2015 WL 1439711, at *5 (quoting *White v. Comm'r of Soc. Sec.*, No. 12-cv-12833, 2013 WL 4414727, at *8 (E.D. Mich. Aug. 14, 2013)). However, "[o]nce the claimant's application reaches the ALJ, . . . the

6

single decision-maker's assessment is no longer relevant to the determination of disability." *Id.* (citing *White*, 2013 WL 4414727, at *8).

Although, as the Commissioner concedes, the ALJ should not have relied on the single decision-maker's opinion, this error was harmless, because the ALJ also properly relied on the medical opinion of Dr. Turner, (Tr. 28), and as discussed below, her opinion regarding Plaintiff's RFC was otherwise supported by substantial evidence. *See, e.g.*, *White*, 2013 WL 4414727, at *10; *Widener v. Astrue*, No. 10-263, 2011 WL 3101102, at *3 (E.D. Ky. July 25, 2011). In any case, Plaintiff suggests that the ALJ should have given *more weight* to Mr. Burton's opinion, not less, and he does not argue that the ALJ's reliance on Burton's opinion was improper. (*See* Doc. # 11-1 at 9).

Dr. Turner's opinion supports the ALJ's determination in this case. Dr. Turner, a state agency medical consultant, provided a report on July 27, 2016 based on Plaintiff's medical records and the opinion of the examining source, Dr. Chaney. (Tr. 101-104). Dr. Turner opined that Plaintiff could lift or carry up to 50 pounds occasionally, or up to 25 pounds frequently; stand or walk up to six hours in an eight hour workday; sit for six hours in an eight hour workday, frequently climb ramps or stairs; occasionally climb ladders or scaffolds; and frequently balance, stoop, kneel, crouch, or crawl with a limited ability to lift overhead with his left and right arms. (Tr. 102-103). In addition, Dr. Turner indicated that Plaintiff should avoid concentrated exposure to vibrations. (Tr. 103). This opinion closely reflects that of the ALJ who, to reiterate, found that Plaintiff had the following limitations:

> [H]e can lift or carry up to 50 pounds occasionally, or up to 25 pounds frequently; stand or walk for up to six hours in an eight hour workday; sit for up to six hours in an eight hour workday; frequently climb ramps or stairs; occasionally climb ladders or scaffolds; frequently balance on a moving

>platform, stoop, kneel, crouch or crawl; and frequently reach overhead with the right upper extremity.

(Tr. 26-27). Plaintiff specifically takes issue with the ALJ's divergence from Dr. Turner's report with respect to his finding that Plaintiff has a limited ability to lift overhead with both arms and his suggestion that Plaintiff avoid exposure to concentrated vibrations. (Doc. # 11-1 at 9). However, the ALJ appropriately considered Dr. Turner's opinion to the extent it was supported by Plaintiff's medical records, and also appropriately considered them alongside non-medical evidence in the form of Plaintiff's own testimony about his abilities. *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1545(a)(1)-(3).[1]

With respect to Plaintiff's alleged right shoulder issue, the ALJ noted that after Plaintiff underwent shoulder surgery in September 2017, he reported no pain, popping, or catching at a follow-up appointment in November 2017. (Tr. 27, 727). That same report indicated a lack of pain with overhead activities. (Tr. 727). In addition, a physical therapy progress report from December 2017 indicated that Plaintiff had only "mild difficulty" reaching overhead with his right arm and that his goal of reaching overhead repeatedly was expected to be achieved with continued therapy. (Tr. 736-737). With respect to his left shoulder, Plaintiff had an x-ray in May 2016 identifying possible tendinitis, but Plaintiff had no reported follow-up. (Tr. 27-28, 410). The ALJ also took into account an MRI scan of Plaintiff's lumbar region from April 2016 that was deemed "normal," (Tr. 28, 337, 408, 460), although an earlier March 2016 report did note degenerative disc disease and facet arthropathy, (Tr. 28, 409). In addition, Plaintiff was

---

[1] Further, Plaintiff has not provided any evidence in support of his argument that his alleged inability to withstand concentrated exposure to vibrations would impact his ability to perform past work. (Doc. # 11-1 at 9). Because Plaintiff bears the burden of demonstrating inability to engage in past relevant work, this augment fails. *Jones*, 336 F.3d at 474.

8

referred to physical therapy for his lower back pain in February 2016, (Tr. 462), and an April 2016 assessment informed that Plaintiff was able to perform the therapeutic activity with "minimal complaints of pain and difficulty" and that Plaintiff had "progressed well toward and met all stated goals," (Tr. 485).

Plaintiff also asserts that the ALJ did not adequately explain her reason for discounting the more restrictive opinion of Dr. Chaney. (Doc. # 11-1 at 9). Dr. Chaney, who examined Plaintiff on March 26, 2016, reported that Plaintiff had "some difficulty with squatting, toe-touching, and kneeling" and also "some difficulties" bending to the side. (Tr. 337-340). Dr. Chaney's report concluded as follows:

> Claimant does have the ability to perform activities including some sitting, some standing, and some moving about. Activities of lifting and carrying are impaired at this time. The patient can handle objects with one or both hands . . . . The abilities of kneeling, squatting, bending, and climbing were assessed and will be difficult for the claimant.

(Tr. 340).

Yet, as previously noted, the ALJ was not required to give controlling weight to the opinion of Dr. Chaney, a non-treating physician, nor was she required to provide "good reasons" for her divergence from that opinion. *Gayheart*, 710 F.3d at 376. Furthermore, the ALJ considered Dr. Chaney's suggested limitations, noting that the report identified no postural or gait abnormalities and no problems ambulating without an assistive device. (Tr. 28, 339). The ALJ explained that she gave Dr. Chaney's report only "partial weight" because, unlike Dr. Turner's, it did not describe Plaintiff's limitations using the specific criteria and terminology used to assess RFC (e.g., frequency able to climb stairs and balance), and instead, provided a more general conclusion that certain abilities would be "difficult" for Plaintiff. (Tr. 28, 340).

Finally, the ALJ took into account Plaintiff's testimony that he "has no problems with his personal care and can prepare meals for himself," and can "do anything for 10 minutes before he ha[s] sharp pains in his back." (Tr. 27). Plaintiff also testified that he goes outside two to three times a day, drives himself to stores, and does yard work and other work around the house. (Tr. 27, 54). In sum, based upon a review of the record, it is apparent that the ALJ's decision with respect to Plaintiff's RFC is supported by substantial evidence, and that the ALJ appropriately weighed the medical opinions of Drs. Turner and Chaney, along with medical records and non-medical evidence to make her determination.

### 2.     *Past Relevant Work*

Next, Plaintiff argues that the ALJ's determination that he can perform his past composite job as a drill operator, heavy equipment operator, and shot packer in the coal-mining industry is not supported by substantial evidence in the record. (Doc. # 11-1 at 11-13). Plaintiff asserts that the ALJ improperly relied on the testimony of a vocational expert to find that Plaintiff could perform past relevant work, because, according to Plaintiff, the vocational expert testified that someone with Plaintiff's physical limitations could *not* perform his past relevant work. (*Id.*). During the administrative hearing, the ALJ posed a hypothetical question to the vocational expert, Christopher Rymond, asking whether a "worker of the age and education and past relevant work of the claimant" who could perform medium work with certain limitations would be able perform any of Plaintiff's past work. (Tr. 77). The ALJ listed the following limitations applicable to the hypothetical worker:

> lift or carry up to 50 pounds occasionally, 25 pounds frequently, stand and walk for six out of eight, sit for six out of []eight. Frequently able to climb

10

>   stairs and ramps and occasionally able to climb ladders and scaffolds.
>   Frequently able to balance on a moving platform or stoop or kneel or crouch
>   or crawl . . . . frequently able to reach overhead with the right upper extremity
>   but not repetitively.

(*Id.*). In response to the ALJ's question: "Would such a person be able to perform any of Mr. Labreche's past work?" the vocational expert responded, "No, Your Honor, based on this hypothetical the past work would be allowed for the DOT [Dictionary of Occupational Titles] and looking at the record up to medium, per the claimant description." (*Id.*).

In her opinion regarding Plaintiff's ability to perform past relevant work, the ALJ stated as follows:

>   I asked the vocational expert if a hypothetical person of the claimant's age,
>   education and past work experience, with the residual functional capacity
>   as I have described it above, would be able to perform the claimant's past
>   relevant work.
>
>   Mr. Rymond testified that a hypothetical worker with the residual functional
>   capacity as noted above could perform the claimant's past relevant work,
>   both as he performed it as a composite job, and as each defining job is
>   defined individually.

(Tr. 29-30). Based on the vocational expert's testimony, the ALJ concluded that Plaintiff was able to perform his past relevant work. (Tr. 30). Thus, although Mr. Rymond's response to the hypothetical began with "No," the ALJ interpreted the expert's response to indicate that someone with Plaintiff's limitations could, in fact, perform his past relevant work. Plaintiff interprets the expert's response differently, to indicate that someone with Plaintiff's limitations could not perform his past work, arguing that the expert's response was at best ambiguous. (Doc. # 11-1 at 12). In addition, Plaintiff faults the ALJ for not relying on the opinion of examining source Dr. Chaney, who opined that "[b]ased on physical examinations as described above, it would be readily expected that the claimant

11

would have difficulty performing work activities related to his prior occupation." (*Id.*) (citing Tr. 340).

Although the vocational expert's testimony was somewhat ambiguous based on the hearing transcript, courts generally defer to an ALJ's interpretation of testimony, as the judge is able to observe a witness firsthand, assessing his demeanor and other context clues. *Cf. Maralason v. Comm'r of Soc. Sec.*, No. 15-cv-11666, 2016 WL 5405302, at *6 (E.D. Mich. Sept. 28, 2016) (describing the court's deference to an ALJ's assessment of the credibility of a witness based on her observations (citing *Walters*, 127 F.3d at 531)). Moreover, aside from the vocational expert's response of "no," his testimony supported the ALJ's conclusion. The vocational expert testified that Plaintiff's work as a drill operator is classified as "medium" work pursuant to the DOT, but that based on Plaintiff's testimony, he was doing lighter work. (Tr. 75-76). He also testified that Plaintiff's past job of heavy equipment operator is medium, and that the job of shot packer is light to medium. (Tr. 76). And, while the vocational expert began his response to the hypothetical with "no," he went on to state that "based on [the] hypothetical the past work would be allowed for the DOT and looking at the record up to medium, per the claimant description." (Tr. 77).

In addition, Plaintiff testified that while he was still working, his shoulder pain never interfered with his ability to fill holes after the holes had been drilled out. (Tr. 63-64). He also testified that as a drill operator, he was not lifting any weight and was operating the drill by way of buttons and levers. (Tr. 73-74). When asked by the ALJ whether he could work as a drill operator now, Plaintiff responded "I honestly don't know. I don't think my

nerves will let me"—not mentioning any of the physical limitations on which his disability claim is based. (Tr. 74).

Finally, although Dr. Chaney stated that, in his opinion, Plaintiff would have difficulty doing his past work, he added the caveat that his opinion on Plaintiff's "work capacity [was] to facilitate job placement and [did] not necessarily reflect an in-depth, direct threat analysis." (Tr. 340). Unlike the vocational expert, Dr. Chaney did not specifically consider the DOT's classification or description of Plaintiff's past work. Thus, the ALJ was justified in relying on the testimony of the vocational expert, rather than that of Dr. Chaney. *See Snow v. Comm'r of Soc. Sec.*, No. 5:14-cv-1861, 2015 WL 4507271, at *19 (N.D. Ohio July 24, 2015) (finding no error in the ALJ's decision to afford no weight to a medical doctor's opinion regarding the plaintiff's vocational abilities). Thus, the ALJ did not err by not considering Dr. Chaney's opinion regarding Plaintiff's ability to perform past work, and her opinion was supported by substantial evidence in the record in the form of the vocational expert's testimony and Plaintiff's own testimony at the administrative hearing.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 15) is hereby **GRANTED**;

(4)     This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5)     A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 9th day of November, 2020.

Signed By:
*David L. Bunning*   DB
United States District Judge

J:\DATA\SocialSecurity\MOOs\Pikeville\19-102 Labreche MOO.docx